1

2

3                       **UNITED STATES DISTRICT COURT**

4                      **NORTHERN DISTRICT OF CALIFORNIA**

5

6    **SELENA MELTON, BY AND THROUGH HER**          Case No.  20-cv-06613-YGR
     **GUARDIAN AD LITEM, BEVERLY CANNON**
7    **MOSIER,**
                                                    **ORDER GRANTING MOTIONS TO DISMISS**
8                        Plaintiff,                 **WITHOUT PREJUDICE**

9             vs.                                   Re: Dkt. Nos. 19, 24, 29

10   **CALIFORNIA DEPARTMENT OF**
     **DEVELOPMENTAL DISABILITIES, ET AL.,**
11
                         Defendants.
12

13

14            Plaintiff Selena Melton, by and through her guardian ad litem Beverly Cannon Mosier,

15   brings this action against defendants California Department of Developmental Services ("DDS" or

16   the "Department"), Regional Center of the East Bay, Inc. ("RCEB"), and Arlene's Residential

17   Care #3 ("Arleen's"),[1] for allegedly violating federal and state antidiscrimination laws by placing

18   her with a group home without effective communication aids.  Currently pending before the Court

19   are motions to dismiss filed by each of the three defendants, seeking dismissal for lack of subject

20   matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim

21   under Federal Rule of Civil Procedure 12(b)(6).  For the reasons set forth below, the Court

22   **GRANTS** all three motions to dismiss **WITHOUT PREJUDICE**.[2]

23

24            [1] In its motion, Arleen's Residential Care, Inc. states that it has been incorrectly sued as
     Arlene's Residential Care #3.  As such, the Court will refer to defendant as "Arleen's."
25

26            [2] RCEB has requested judicial notice of decisions issued by this District and the Eastern
     District of California.  (Dkt. No. 19-3.)  Plaintiff has requested judicial notice of administrative
27   hearing decisions against various service agencies, a decision issued by this District, and a
     legislative analysis of the Department's 2020-21 budget.  (Dkt. Nos. 35, 43.)  The Court **GRANTS**
28   these requests for judicial notice as they are unopposed and pertain to matters of public records.

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

# I. BACKGROUND

The complaint alleges as follows:

Plaintiff is a 52-year-old deaf-blind woman who has been diagnosed with a mild intellectual disability, mild cerebral palsy, epilepsy, and anxiety.  (Complaint ("Comp."), Dkt. No. 1, ¶ 8.)  She has been deaf since birth and, upon becoming blind in or around 2010, uses Tactile American Sign Language ("ASL") to communicate.  (*Id.* ¶¶ 1, 8.)  Tactile ASL is a language in which the receiver places their hands lightly over the signer's hands to interpret the signs through touch and movement.  (*Id.* ¶¶ 1, 12.)  As a result of her developmental disabilities, plaintiff has been receiving services administered by the Department pursuant to the California Developmental Disabilities Services Lanterman Act ("Lanterman Act"), California Welfare & Institutions Code ("W.I.C."), Section 4500 *et seq.*  (*Id.* ¶ 9.)

Under this comprehensive statutory scheme, the Department contracts with nonprofit corporations to establish and operate a statewide network of regional centers.  W.I.C. § 4620.  Regional centers are responsible for determining eligibility, assessing needs, and coordinating the delivery of services for developmentally disabled persons (referred to in the statute as "consumers").  *Id.*  If a regional center determines that an individual has a developmental disability and is eligible for services, a planning team, comprised of the individual with the disability, the parents or guardian, one or more regional center representatives, and any other person or entity invited to participate, draws up an individual program plan ("IPP").  *Id.* § 4512(j).  The goals and objectives developed through the IPP process should maximize opportunities for the individual to be part of community life, enjoy increased control over her or his life, acquire positive roles in community life, and develop the skills to accomplish the aforementioned.  *Id.* § 4646.5(2); *see also id.* § 4646.  Regional centers contract with local service providers (referred to in the statute as "vendors") for the direct delivery of services.  *Id.* § 4648.

Plaintiff has been an RCEB client "for close to fifty years."  (Compl. ¶ 23.)  In 1994, before plaintiff moved into the group home operated by Arleen's, the administrator at her previous home recommended to her RCEB caseworker that she be placed in a home where staff could communicate with her by sign language.  (*Id.* ¶ 29.)  The RCEB caseworker also noted that

1  plaintiff repeatedly requested a home in which residents were deaf and could sign.  (*Id.* ¶ 30.)

2  Despite the recommendation and repeated requests, RCEB placed plaintiff at Arleen's group

3  home, where no one on the staff could communicate in ASL or was otherwise "train[ed] on

4  providing services to a consumer who is deaf-blind."  (*Id.* ¶¶ 31, 46.)  As a result, plaintiff "has

5  lived a home life of almost complete isolation" for decades, causing physical and mental pain and

6  severe emotional distress.  (*Id.* ¶¶ 32, 81, 110, 148, 157, 176.)

7        On September 21, 2020, plaintiff filed this action against defendants for the failure to

8  provide an ASL interpreter or other communication aids.  Plaintiff alleges that "[d]efendants have

9  systematically denied [her] the auxiliary aides and services to which she is entitled.  Without these

10  supports, she has been deprived of almost all human connection at her group home, of adequate

11  and equal psychiatric care and the extensive benefits of the programs, services and activities DDS

12  and RCEB are funded and statutorily mandated to provide."  (*Id.* ¶ 53.)  Plaintiff seeks injunctive

13  relief and damages pursuant to the following causes of action, namely violation of (1) Title II of

14  the American Disabilities Act ("ADA") against the Department; (2) Title III of the ADA against

15  RCEB; (3) Section 504 of the Rehabilitation Act ("Section 504") against the Department and

16  RCEB; (4) the Fair Housing Act against Arleen's; (5) California Government Code Section 11135

17  against RCEB; (6) the Unruh Civil Rights Act against RCEB and Arleen's; (7) the California

18  Disabled Persons Act against RCEB and Arleen's; and (8) the Elder Abuse and Dependent Adult

19  Civil Protection Act against RCEB and Arleen's; and additionally, (9) negligence against RCEB

20  and Arleen's.

21  **II. LEGAL FRAMEWORK**

22        **A. FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1)**

23        "Federal courts are courts of limited jurisdiction . . . [and] it is to be presumed that a cause

24  lies outside this limited jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375,

25  377 (1994).  Under Federal Rule of Civil Procedure 12(b)(1), a defendant may challenge the

26  plaintiff's jurisdictional allegations in one of two ways.  A "facial" attack accepts the truth of the

27  plaintiff's allegations but asserts that they "are insufficient on their face to invoke federal

28  jurisdiction."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  The district

court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6), namely by determining whether the allegations are sufficient to invoke the court's jurisdiction while accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor. *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013).

A "factual" attack, by contrast, contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings. *Safe Air for Everyone*, 373 F.3d at 1039. "When the defendant raises a factual attack, the plaintiff must support her jurisdictional allegations with 'competent proof' . . . under the same evidentiary standard that governs in the summary judgment context." *Leite v. Crane Co.*, 749 F.3d 1117, 1122 (9th Cir. 2014) (citations omitted). "The plaintiff bears the burden of proving by a preponderance of the evidence that each of the requirements for subject-matter jurisdiction has been met." *Id.* (citation omitted). "[I]f the existence of jurisdiction turns on disputed factual issues, the district court may resolve those factual disputes itself." *Id.* (citations omitted).

## B. FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)

Under Federal Rule of Civil Procedure 12(b)(6), an action may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). The complaint must allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When considering a motion to dismiss, a court must accept all material allegations in the complaint as true and construe them in the light most favorable to plaintiff. *NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

## C. THE LANTERMAN ACT'S FAIR HEARING PROCESS

The Lanterman Act provides a specified procedure for any issues arising from services rendered thereunder. In pertinent part, Section 4706 of the California Welfare and Institutions Code provides that "all issues concerning the rights of persons with developmental disabilities to receive services under this division shall be decided under this chapter." W.I.C. § 4706. The

4

1   statute then delineates the procedure to provide a fair administrative hearing.  *Id.* §§ 4710–4712.

2   Section 4710.5(a) provides that any recipient of services "who is dissatisfied with any decision or

3   action of the service agency, which he or she believes to be illegal, discriminatory, or not in the

4   recipient's or applicant's best interests, shall . . . be afforded an opportunity for a fair hearing."  *Id.*

5   § 4710.5(a).  The statute also provides means to resolve issues through informal meetings and

6   mediation prior to an administrative hearing.  *Id.* §§ 4710.5–4710.9, 4711.5.  If the recipient

7   chooses a fair hearing, Section 4712.5 provides that each party remains bound by the final

8   administrative decision and either party may appeal the decision "to a court of competent

9   jurisdiction."  *Id.* § 4712.5.

10          The Lanterman Act's "fair hearing procedures are a claimant's exclusive remedy for

11   issues relating to the provision of services, which must first be exhausted before seeking judicial

12   relief in the superior court."  *Harbor Reg'l Ctr. v. Office of Admin. Hearings*, 210 Cal. App. 4th

13   293, 312 (2012) (internal citations and quotations omitted).  "The administrative fair hearing

14   procedures should be used to resolve any challenge [the plaintiff or their representative] has to the

15   facility the regional center ultimately may select for [the plaintiff] and the services to be provided

16   at that facility.  The trial court should not resolve any such challenges in the first instance[.]"

17   *Michelle K. v. Superior Court*, 221 Cal. App. 4th 409, 444 (2013).  "It is well settled that if an

18   administrative remedy is provided by statute, relief must be sought from the administrative body

19   and such remedy must be exhausted before judicial review of the administrative action is

20   available. . . .  Accordingly, the exhaustion of an administrative remedy has been held

21   jurisdictional in California."  *Conservatorship of Whitley*, 155 Cal. App. 4th 1447, 1463–64

22   (2007); *Sierra Club v. San Joaquin Local Agency Formation Com.*, 21 Cal. 4th 489, 510 (1999)

23   ("The general exhaustion rule remains valid: Administrative agencies must be given the

24   opportunity to reach a reasoned and final conclusion on each and every issue upon which they

25   have jurisdiction to act before those issues are raised in a judicial forum.").

26   **III.  ANALYSIS**

27          As currently pleaded, the complaint proceeds on two theories of discrimination: first, that

28   RCEB placed her in a group home (Arleen's) without a qualified interpreter or any staff member

5

United States District Court
Northern District of California

1    "train[ed] on providing services to a consumer who is deaf-blind" (*see, e.g.*, Compl. ¶ 46), and

2    second, that RCEB and the Department lack policies reflecting their obligation to provide effective

3    communication (*see, e.g., id.* ¶ 59).  The Court therefore considers both the specific housing

4    decision and the systemic failure to accommodate deaf consumers.

5         Defendants each move to dismiss the complaint in its entirety.  Among the shared grounds

6    for dismissal are plaintiff's failure to exhaust administrative remedies and the failure to bring her

7    complaint in a timely manner.  With respect to individually asserted grounds for dismissal,

8    defendants argue that the causes of action respectively brought against each one of them fail to

9    state a claim.  The Department separately challenges plaintiff's standing to bring causes of action

10   against it.  The Court will first address the 12(b)(1) challenges as to exhaustion and standing, then

11   consider the 12(b)(6) challenges as to timeliness and the sufficiency of the pleadings.

12       **A. 12(B)(1) CHALLENGES**

13           **1. EXHAUSTION OF REMEDIES**

14        Here, it is undisputed that plaintiff did not exhaust the administrative hearings to redress

15   any of her claims.  To the extent that such claims are premised on her placement with Arleen's

16   and/or the failure to provide her with specific communication services, they must first be

17   adjudicated through the Lanterman Act's fair hearing process before they can be brought to a

18   court.  By the statute's own terms, complaints regarding services provided pursuant to the

19   Lanterman Act are subject to the fair hearing process.  *See* W.I.C. § 4706(a) ("[A]ll issues

20   concerning the rights of persons with developmental disabilities to receive services under this

21   division shall be decided under this chapter[.]"); *see Michelle K.*, 221 Cal. App. 4th at 442 (2013)

22   ("The Lanterman Act's administrative fair hearing procedures allow a developmentally disabled

23   person to challenge any specific decision a regional center or developmental center makes to

24   reduce, terminate, change, or deny that person services.").  This requirement applies to complaints

25   about RCEB's allegedly discriminatory provision of services.  *See* W.I.C. § 4710.5(a) ("Any

26   applicant for or recipient of services . . . who is dissatisfied with any decision or action of the

27   service agency which he or she believes to be illegal, *discriminatory*, or not in the recipient's or

28   applicant's best interests, shall, upon filing a request within 30 days after notification of the

6

1    decision or action complained of, be afforded an opportunity for a fair hearing. . . .") (emphasis

2    supplied).[3]

3        Thus, plaintiff's claims, inasmuch as they are based on the particular housing decision in

4    this case and the attendant failure to provide specific communication aids, are dismissed for failure

5    to exhaust remedies under the Lanterman Act.[4]  This disposition therefore applies to all claims

6    predicated on the housing-specific theory regardless of which defendants those claims are asserted

7    against.  *See, e.g.*, *Bouslog v. Care Options Mgmt. Plans and Support Servs., LLC*, 459 F. Supp.

8    3d 1281, 1285 (N.D. Cal. 2020) (dismissing state law claims against caretaker, caretaker's

9    employer (service provider), regional center, and Department for caretaker's abuse since claims

10   "ar[ose] from services rendered" under  Lanterman Act and thus had to be exhausted in fair

11   hearing process); *Kimiko v. Alta California Regional Center*, No. 19-CV-68, 2020 WL 6146451,

12

13       [3] In further support of her argument that she need not pursue her claims in the fair hearing
     process, plaintiff cites 17 C.C.R. § 50510(12), which preserves clients' rights "of access to the
14   courts . . . [t]o protect or assert any right to which any person with a developmental disability is
     entitled."  During the hearing, counsel identified for the first time a potential conflict in the statute.
15   Curiously, the statute also provides for a different dispute resolution mechanism, the rights-based
     complaint process, W.I.C. § 4731, yet none of the parties address the distinction in procedures.
16   *Compare* W.I.C. §§ 4710–4714 *and* 17 C.C.R. §§ 50900–50992 (fair hearing process), *with*
     W.I.C. § 4713 *and* 17 C.C.R. §§ 50500–50550 (complaint process).  At this juncture, the Court
17   declines to analyze an entirely different set of provisions that none of the parties have properly
     briefed.

18

19       [4] Plaintiff argues that the statute's fair hearing process does not cover the issues raised by
     her complaint (which, she argues, concern discrimination, not the provision of services) and thus
20   she was not required to pursue these claims in a fair hearing.  Plaintiff relies on the Supreme
     Court's decision in *Fry v. Napoleon Cmty. Schools*, 137 S. Ct. 743 (2017), for the proposition that
21   administrative exhaustion is unnecessary when the gravamen of the complaint is unrelated to the
     right guaranteed under the statute.  In *Fry*, the Court concluded that the plaintiff student, who was
22   prohibited from bringing a service dog to school, need not exhaust administrative remedies under
     the Individuals with Disabilities Education Act ("IDEA") before filing her claims under Section
23   504 and the ADA since her claims were unrelated to services guaranteed by the IDEA.  The Court
     held that the requirement to exhaust administrative remedies hinges on whether "the gravamen
24   of the plaintiff's suit is something other than the denial of the IDEA's core guarantee—what the Act
     calls a 'free appropriate public education.'"  *Id.* at 746.
25

26       Although it is not clear whether *Fry*'s logic extends beyond the IDEA context, even under
     that case, the gravamen of plaintiff's suit here, given the entities who she has sued and the relief
27   sought from each, is the denial of the Lanterman Act's core guarantee, the right of persons with
     developmental disabilities to receive services.  The complaint itself labels an interpreter as a
28   communication or auxiliary service  (Compl. ¶¶ 4, 19, 46, 53, 59(i)–(j).)

United States District Court
Northern District of California

at *5 (KJM) (E.D. Cal. Oct. 20, 2020) (dismissing state and federal claims against regional center for lack of supervision leading to plaintiff's sexual assault since she did not exhaust statute's administrative hearing remedy).

Accordingly, all causes of action asserted against RCEB and Arleen's are dismissed, as are the causes of action against the Department for the individualized decision to house plaintiff in a home without effective communication services. Although the Court is doubtful that amendment can cure the jurisdictional defect of these claims against RCEB and Arleen's, it will allow plaintiff an opportunity to amend such claims out of an abundance of caution. Claims against the Department for the systemic failure to accommodate the communication needs of deaf clients are not subject to the Lanterman Act's exhaustion requirement.

### 2. STANDING

The Department separately brings a facial standing challenge, arguing that plaintiff fails to allege a redressable injury that she suffered as a result of violations of the ADA and Section 504 by the Department. To have standing under Article III of the United States Constitution, plaintiff must allege sufficient facts to establish that (i) plaintiff suffered an injury, (ii) such injury is traceable to the defendant's actions or omissions, and (iii) a favorable decision in the instant case will address the injury. *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011).

Here, the Department disputes the second and third elements. It argues that plaintiff's alleged injuries cannot fairly be traced to it since the decision to place plaintiff in a home without an ASL interpreter was made by RCEB and thus could not have been controlled by the Department. It further contends that plaintiff's injuries cannot be redressed by a favorable decision against it since the Department cannot effectuate plaintiff's request for an ASL interpreter or housing transfer and since money damages cannot be recovered due to the state's Eleventh Amendment immunity.

In light of the Court's finding regarding exhaustion, the Department's standing challenge is moot to the extent it implicates claims arising from the housing decision at issue or the facility's failure to provide plaintiff with other *specific* effective communication services. Indeed, the Department "is without authority under the Lanterman Act to control the manner in which the

8

regional centers provide services or to control their operations." *See Ass'n for Retarded Citizens v. Dep't of Developmental Servs.*, 38 Cal. 3d 384, 392 (1985); *see also* Office of the Attorney General, State of California, Director of the Department of Developmental Services, Opinion No. 79-307, 62 Ops. Cal. Atty. Gen. 229, 233 (1979) ("[T]he Department has no general authority to control the operations of the regional centers through contract provisions negotiated under [the Act], although specific statutory exceptions authorize Department contractual control in limited areas.").

However, to the extent that plaintiff seeks to hold the Department responsible for its alleged *policymaking* failure to ensure defendants' compliance with antidiscrimination laws, the Court finds that plaintiff has standing to assert such claims. Although the Department has no authority to control the actual manner in which regional centers provide services to clients, the Department may, as part of its statutory duties, "contractually require that the centers comply with state and federal non-discrimination and equal opportunity laws." 62 Ops. Cal. Atty. Gen. at 232 ("Under Government Code sections 11135-11139.5, the Department is required generally to adopt and enforce regulations preventing discrimination in the programs of the centers.") (footnote omitted). "If the [D]epartment finds that any regional center is not fulfilling its contractual obligations, the [D]epartment shall make reasonable efforts to resolve the problem within a reasonable period of time with the cooperation of the regional center . . . ." W.I.C. § 4635(b)(1). If those efforts are unsuccessful, the Department shall issue a letter of noncompliance stating the noncompliant activities and establishing a specific timeline for the development and implementation of a corrective action plan. *Id.* § 4635(b)(2). The Department shall approve the plan and monitor its implementation. *Id.*[5]

---

[5] More generally, as the court stated in *McCullough v. Dep't of Developmental Servs.*, No. 20-CV-2958 (SI), Dkt. No. 38 (N.D. Cal. Oct. 2, 2020):

By statute, the DDS is charged with ensuring "the regional centers operate in compliance with federal and state law and regulation," including by "tak[ing] all necessary actions" to secure compliance. Cal. Welf. & Inst. Code § 4434 (a), (b). Moreover, "[i]f there are identified gaps in the system of services and supports consumers for whom no provider will provide services," DDS is authorized to

United States District Court
Northern District of California

United States District Court
Northern District of California

Thus, plaintiff's injuries, insofar as they flow from the Department's failure to ensure compliance with antidiscrimination laws, not only can be traced to the Department but also can be redressed by injunctive relief "ordering DDS to implement nondiscriminatory protocols, policies, and practices for ensuring effective communication for persons who are deaf and deaf-blind, and to train its employees in its obligation to provide effective communication to recipients." (Opp. to Dep't Mtn. at 11–12 (citing Prayer in Compl.).) Indeed, such systemic relief can only be obtained from the Department. Moreover, although the Department argues that, under the Eleventh Amendment, it is immune from suits for damages, the Ninth Circuit has squarely held that Title II of the ADA validly abrogates sovereign immunity. *See Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1185 (9th Cir. 2003) (declining to disturb Circuit's "settled precedent" that Congress validly abrogated sovereign immunity under Title II when intervening Supreme Court precedent "addressed only Title I of the ADA"). As for the Rehabilitation Act claim, the complaint adequately alleges that the Department accepts federal funds, thereby waiving sovereign immunity. (Compl. ¶¶ 21, 96 97.)[6] Accordingly, plaintiff has standing to challenge a systemic denial of meaningful access to the Department's services.[7]

---

provide those services and supports directly. § 4648(g). When DDS finds a regional center "has violated this requirement, or whenever it appears that any regional center has engaged in or is about to engage in any act or practice constituting a violation of any provision of [the Lanterman Act] or any regulation adopted thereunder, the department shall promptly take the appropriate steps necessary to ensure compliance with the law[.]" § 4434(c). The director of DDS also "may issue directives to the regional centers as the director deems necessary to protect consumer rights, health, safety, or welfare, or in accordance with Section 4434." § 4639.6.

*Id.* at 1–2 (rejecting standing challenge to class action alleging ADA and Section 504 violations by Department's statewide failure to ensure that the thousands of deaf individuals who qualify for developmental services receive equal access thereto).

[6] *See also* Office of the Legislative Analyst, The 2020-21 Budget: Analysis of the Department of Developmental Services Budget (February 7, 2020) (noting need to ensure compliance with federal rules in order to receive federal funding), Dkt. No. 43-2.

[7] The Department argues that its oversight responsibilities are limited, pointing to *Bouslog* in which the court granted the Department's motion to dismiss the ADA and Section 504 claims

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**B. Rule 12(b)(6)**

Following defendants' 12(b)(1) challenges, the only claims remaining are plaintiff's ADA and Section 504 causes of action against the Department for systemic violations thereof.

**1. Timeliness**

This systemic-violation theory survives the Department's statute of limitations challenge as plaintiff alleges that the Department's "discriminatory conduct is ongoing." (Compl. ¶¶ 79, 108.)[8] As invoked by plaintiff, "[t]he continuing violations doctrine extends the accrual of a claim if a continuing system of discrimination violates an individual's rights up to a point in time that falls within the applicable limitations period." *Douglas v. Cal. Dep't of Youth Auth.*, 271 F.3d 812, 822 (9th Cir. 2001). The continuing violations doctrine applies if the plaintiff alleges "a systematic policy or practice of discrimination that operated, in part, within the limitations period." *Id.* "A systemic violation claim requires no identifiable act of discrimination in the limitations period, and refers to general practices or policies." *Id.*; *see also Flowers v. Carville*, 310 F.3d 1118, 1126 (9th Cir. 2002) ("The doctrine applies where there is no single incident that can fairly or realistically be identified as the cause of significant harm.").[9] Accordingly, plaintiff's

---

brought by the plaintiff Lanterman Act client for alleged abuse and neglect by her caretaker. *Bouslog*, 459 F. Supp. 3d at 1286–87. However, that court examined those claims under Rule 12(b)(6), not with respect to standing under Rule 12(b)(1), and concluded that the plaintiff failed to state a claim against the Department for the failures of a service provider to execute services. Thus, *Bouslog* does not support the proposition that a plaintiff lacks standing to assert a claim for a systemic failure to ensure compliance with antidiscrimination laws.

[8] The ADA cause of action is subject to a three-year limitation period. *See Sharkey v. O'Neal*, 778 F.3d 767, 773 (9th Cir. 2015) (holding that California Civil Procedure Code § 338's three-year statute of limitations applies to Title II claim). The Section 504 cause of action has also been subject to a three-year limitation period, though this point has not been expressly determined. *See Estate of Stern v. Tuscan Retreat, Inc.*, 725 F. App'x 518, 521 (9th Cir. 2018) ("We need not conclusively determine the statute of limitations period applicable to the Rehabilitation Act, but the longest option is California's three-year provision for '[a]n action upon a liability created by statute.' So we use it.") (citation omitted); *Krushwitz v. Univ. of California*, 599 F. App'x 714, 715 (9th Cir. 2015) (assuming without deciding that three-year statute of limitations applies to Section 504 claim). The Court need not resolve which statute of limitations period applies to plaintiff's Section 504 cause of action.

[9] The continuing violations doctrine does not apply to the suffering of alleged ongoing

1    remaining causes of action, to the extent that they are premised on the Department's "ongoing"

2    failure to reasonably accommodate deaf clients, are not time-barred.[10]

3              **2.  SUFFICIENCY OF PLEADINGS**

4              The Department additionally moves to dismiss the ADA and Section 504 causes of action

5    for failure to sufficiently state claims against it.  The Department argues, first, that it cannot be

6    held liable for the actions of RCEB or Arleen's, and second, that plaintiff "fails to plead facts

7    showing that [ ] any alleged denial of benefits was based on her disability, or that any such

8    discrimination was intentional."  (Dep't Mtn. at 11.)  Although the first contention speaks to the

9    housing-specific theory and is thus moot, the Court agrees with the Department's second

10   contention in part.

11             Under both Title II of the ADA and Section 504 of the Rehabilitation Act, plaintiff must

12   show that she was excluded from participating in or denied the benefits of a program's services or

13   otherwise discriminated against.  "[C]ompensatory damages are not available under Title II or

14   [Section] 504 absent a showing of discriminatory intent."  *Ferguson v. City of Phoenix*, 157 F.3d

15   668, 674 (9th Cir. 1998), *as amended* (Oct. 8, 1998); *see Duvall v. Cty. of Kitsap*, 260 F.3d 1124,

16   1138 (9th Cir. 2001) (internal citations omitted), *as amended on denial of reh'g* (Oct. 11, 2001).

17   The Ninth Circuit requires that plaintiff show that the Department acted with "deliberate

18   indifference," which requires "both knowledge that a harm to a federally protected right is

19   substantially likely, and a failure to act upon that . . . likelihood."  *Duvall*, 260 F.3d at 1139.

20   "When the plaintiff has alerted the public entity to [the] need for accommodation (or where the

21   _____

22   effects of alleged past acts of discrimination.  *See Knox v. Davis*, 260 F.3d 1009, 1014–15 (9th
     Cir. 2001) ("[T]his court has repeatedly held that a mere continuing impact from past violations is
23   not actionable[.]") (internal quotation marks and citation omitted).  While plaintiff asserts that the
     harm is ongoing, she also alleges that the discriminatory *conduct* is also ongoing.
24

25            [10] Although the Third Circuit has held that a reasonable accommodation request under the
     ADA "is a one-time occurrence rather than a continuing practice, and therefore, does not fit under
26   the continuing violations theory," *Mercer v. SEPTA*, 608 F. App'x 60, 63 (3d Cir. 2015), the
     California Supreme Court has observed, at least in the employment context, that "reasonable
27   accommodation is often an ongoing process rather than a single action."  *Richards v. CH2M Hill,
     Inc.*, 26 Cal. 4th 798 (2001) ("As with harassment, an instance of an employer's failure to
28   accommodate that in isolation may seem trivial can assume greater significance and constitute a
     greater injury when viewed as one of a series of such failures.").

need for accommodation is obvious, or required by statute or regulation), the public entity is on notice that an accommodation is required, and the plaintiff has satisfied the first element of the deliberate indifference test." *Id.* To meet the second prong, the entity's failure to act "must be a result of conduct that is more than negligent, and involves an element of deliberateness." *Id.*

Plaintiff adequately alleges that her exclusion from participation in the Department's program was by reason of her disability. The complaint specifically alleges that as a result of the failure to accommodate her communication needs, plaintiff was denied benefits of the Department's services that were provided to other consumers. (Compl. ¶¶ 77(d) ("[a]ffording Ms. Melton an opportunity to participate in or benefit from DDS or RCEB's aids, benefits or services that is not equal to that afforded others"), 90(c) (same).) However, for purposes of alleging intentional discrimination, her allegations with respect to both notice and failure to act are lacking. Here, plaintiff alleges "[u]pon information and belief, [that] DDS has been notified a number of times that there is a state-wide problem of regional centers, including RCEB specifically, not providing auxiliary aids and services to ensure effective communication for deaf and deaf-blind consumers." (*Id.* ¶ 19.) Without more, the complaint fails to allege any facts demonstrating that the Department was aware of the "state-wide problem" and failed or refused to correct it.[11] The Court will therefore dismiss plaintiff's ADA and Section 504 causes of action against the Department without prejudice and with leave to amend.

**IV.  CONCLUSION**

For the foregoing reasons, the Court **GRANTS** the motions to dismiss of all three defendants **WITHOUT PREJUDICE**.

Plaintiff shall have the opportunity to cure the factual defects underlying her causes of action against the Department. Out of an abundance of caution, the Court grants plaintiff leave to plead a theory that exempts her housing-specific claims from the Lanterman Act's hearing

---

[11] Indeed, the Lanterman Act's fair hearing process provides one avenue for alerting the Department to widespread problems in the system of delivering services to developmentally disabled individuals. *See* W.I.C. 4712.5(d) ("The department shall collect and maintain, or cause to be collected and maintained, redacted copies of all administrative hearing decisions issued under this division. . . . The department shall use this information in partial fulfillment of its obligation to monitor regional centers . . . .").

United States District Court
Northern District of California

process, as long as she can do so consistent with Rule 11 obligations.  Thus, leave is granted as to the causes of action against RCEB and Arleen's as well.  Accordingly, the Court **DISMISSES** the complaint in its entirety with **LEAVE TO AMEND**.

Plaintiff shall file an amended complaint within twenty-one days of this Order and defendant(s) shall respond within twenty-one days of the filing.

The Order terminates Docket Numbers 19, 24, 29.

**IT IS SO ORDERED.**

Dated: February 18, 2021

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

United States District Court
Northern District of California