UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SELENA MELTON,<br><br>        Plaintiff,<br><br>    v.<br><br>REGIONAL CENTER OF THE EAST BAY, INC.,<br><br>        Defendant. | Case No. 20-cv-06613-YGR (TSH)<br><br>**DISCOVERY ORDER**<br><br>Re: Dkt. Nos. 218, 220, 221 |

On May 16, 2023, Plaintiff served Defendant RCEB with her first set of requests for admission ("RFAs"). RFA 61 asked RCEB to "Admit that before July 2022 neither you nor Arleen's arranged for Plaintiff to have an ASL interpreter for any medical visit." RFA 62 asked RCEB to "Admit that you knew in the time period before July 2022 that Arleen's did not arrange for Plaintiff to have an ASL interpreter for any medical visit." RCEB admitted both RFAs.

On June 10, 2024 RCEB received copies of Plaintiff's medical records that it now contends show these admissions were untrue. RCEB sat on its hands for about 10 months, and then six days before the close of fact discovery filed the present joint discovery letter brief seeking to withdraw these admissions. ECF No. 218. Fact discovery is now closed. ECF No. 207. The Court denies the motion.

Rule 36(b) provides that "the court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." RCEB's motion fails both requirements.

Because this case asserts claims under the Americans with Disabilities Act, *see* First Amended Complaint, ECF No. 48, Plaintiff's view is that the legally relevant meaning of

1 "interpreter" is: "Qualified interpreter means an interpreter who . . . is able to interpret effectively,
2 accurately, and impartially, both receptively and expressively, using any necessary specialized
3 vocabulary." 28 C.F.R. § 35.104. RCEB disagrees because the term "ASL interpreter" was not
4 defined in the RFAs. But even undefined, "ASL interpreter" implies a certain level of quality and
5 that interpretation was provided. If Plaintiff went to a medical appointment with someone who
6 knew a few words in ASL, it would be a stretch to say that she went with an ASL "interpreter."
7 Likewise, if she went with someone who was proficient in ASL but who did not provide
8 interpretation, she went with someone who *knew* ASL but she did not go with an "interpreter."

The medical records do not indicate, and do not come close to indicating, whether an interpreter was provided for Plaintiff's medical visits. The records for every single visit state that Plaintiff was accompanied by staff from Arlene's, and the records for nearly every visit state that Plaintiff was mute but signed with staff, but for the most part they don't indicate that any signing occurred during the appointment. There are a handful of instances where the appointment record makes clear that some signing occurred during the appointment, so for those appointments we may infer the staff member had some knowledge of ASL. *See, e.g.,* RCEB_012930 ("The pt waved at me and blew me a kiss when staff signed to her that I was her doctor."), RCEB_012950 (Patient "signs with the staff: 'Someone comes in my room and I don't know who it is. I have an allergy and need something for my nose.'"). This leaves us with four problems. Except for the rare instances when the record indicates that some signing occurred during the appointment, for most of the appointments there is no indication whether any signing occurred during the appointment (problem 1); whether the staff member who accompanied Plaintiff knew how to sign at all (i.e., was one of the staff members who signed with Plaintiff in the group home) (problem 2); if so, whether the staff member's ability to sign was good enough that we might call that person an interpreter (problem 3); and in those rare situations where we can see that some signing occurred, whether any significant portion of the appointment was interpreted, such that we might say Plaintiff had an ASL interpreter with her (problem four).

Prior to April 3, 2025, Plaintiff had RCEB's admission that there were not interpreters, so she didn't need to track down and depose (and did not track down and depose) the staff members

2

1  who accompanied Plaintiff to these medical appointments from 2013 to 2017 or the doctor.  Right
2  near the close of fact discovery, RCEB has now moved to withdraw those admissions.  But that
3  would not "promote the presentation of the merits of the action" and would obviously "prejudice
4  the requesting party in maintaining . . . the action on the merits" because there was no way in the
5  time remaining in fact discovery that Plaintiff could have taken the necessary discovery to develop
6  a record on whether Plaintiff had an interpreter with her at these appointments.  *See Conlon v.*
7  *United States*, 474 F.3d 616, 624 (9th Cir. 2007) ("As a result [of the admissions], the government
8  conducted none of the discovery it otherwise needed to prove its case at trial. . . [W]e conclude
9  that the district court did not clearly err in finding that withdrawal of the deemed admissions at
10 such a late stage in the case would prejudice the United States.").  As discussed, the medical
11 records themselves don't answer the question.
12     RCEB's lengthy, prejudicial, and unjustified delay in bringing this motion has robbed
13 Plaintiff of the ability to develop this issue on the merits factually without RCEB's admissions.
14 *See id*. at 625 ("the district court may consider other factors, including whether the moving party
15 can show good cause for the delay").  There is also no reason to believe that current employees at
16 Arlene's could competently testify to the skills and training possessed by staff members from so
17 long ago.  Allowing RCEB to withdraw its admissions would result in an evidentiary void on an
18 important issue, with the result that Defendant would be likely to prevail on that issue at trial
19 simply by default because Plaintiff has the burden of proof.  That does not promote the
20 presentation of the merits of the action.  RCEB has explained that the cause of its delay was a
21 change in counsel handling this case and that the current attorney simply did not review these
22 medical records, long in Defendant's possession, until recently.  This is not good cause.
23     This motion would be different if the medical records actually answered the question
24 whether an interpreter was provided.  If the records conclusively showed that interpreters were
25 provided, it wouldn't make sense to trap Defendant with an untrue admission.  That would
26 unfairly benefit Plaintiff for the previous defense counsel's having made a mistake.  However, the
27 medical records do not show that the admissions were untrue.  Rather, they make clear that taking
28 discovery to develop the evidence needed to show that the staff members in these long-ago

3

medical appointments did or did not act as interpreters would be time consuming, difficult, and uncertain. And Plaintiff, of course, is out of time. Accordingly, RCEB's motion is **DENIED**.[1]

**IT IS SO ORDERED.**

Dated: April 10, 2025

THOMAS S. HIXSON
United States Magistrate Judge

---

[1] The motion to seal at ECF No. 220 is **GRANTED**.